**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JEFFREY JIMENEZ,<br>*Plaintiff*,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br>*Defendant*. | No. 3:25-cv-1553 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Mr. Jeffrey Jimenez ("Mr. Jimenez" or "Plaintiff") has sued State Farm Fire and Casualty Company ("State Farm" or "Defendant"), alleging that State Farm wrongfully denied coverage under his homeowners insurance policy following a fire at his property. Mr. Jimenez brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.

State Farm moves to dismiss the breach of the implied covenant of good faith and fair dealing, Count Two, and the claim for declaratory judgment., Count Three. Mot. to Dismiss, ECF No. 7; Mem. of L. in Supp. of Mot. to Dismiss, ECF No. 7-1 ("Def.'s Mem.").

For the following reasons, State Farm's motion to dismiss is **GRANTED in part** and **DENIED in part.**

The declaratory judgment claim, Count Three, is **DISMISSED** from the case, but the breach of the implied covenant of good faith and fair dealing, Count Two, shall remain, along with the breach of contract claim, Count One.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Mr. Jimenez owns a two-family property located at 24 Pleasant Street in New London, Connecticut (the "Property"). Compl. ¶¶ 1, 3. State Farm insured the Property under insurance policy number HW-2107 (the "Policy"). *Id.* ¶ 4. On or about November 24, 2023, a fire damaged the Property, and Mr. Jimenez filed a claim with State Farm (the "Claim"). Compl. ¶¶ 7–8. The Policy provides Fair Rental Value coverage "[w]hen a loss insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable." *Id.* ¶ 11. Before the fire, Mr. Jimenez alleges that he rented part of the Property to Justinia A. Sime under an oral lease agreement. *Id.* ¶¶ 9–10.

In support of his claim for Fair Rental Value, Mr. Jimenez alleges that he provided State Farm with bank deposit receipts demonstrating that he collected rent in cash, a news article stating that three tenants were impacted by the fire, and a June 6, 2024 letter from Ms. Sime stating that she provided him with "$2,200 on the first of every month, for approximately 14 months, to fulfill her rental obligations." *Id.* ¶¶ 13–15. Mr. Jimenez alleges that his rental ledger was destroyed in the fire. *Id.* ¶ 13.

On September 11, 2024, State Farm denied fair rental value coverage. *Id.* ¶ 17. The Complaint alleges that State Farm cited the Policy's "Your Duties After Loss" provision, including its requirement that Mr. Jimenez "provide [State Farm] with any requested records and documents" "as often as [State Farm] reasonably require[d]," to support its denial. *Id.* ¶ 18. Mr. Jimenez alleges that he complied with that provision by "providing Defendant all responsive and relevant documentation in Plaintiff's possession" and that he was "unable to provide Defendant documents that do not exist, as seemingly and nonsensically requested by Defendant." *Id.* ¶ 19. He further alleges that State Farm made "improper and unreasonable requests" that were

"impossible to comply with" in "an intentional effort to avoid its contractual obligations to Plaintiff" and "avoid issuing further payment." *Id.* ¶ 20.

### B. Procedural History

On September 18, 2025, State Farm removed this action from the Connecticut Superior Court to this Court. Notice of Removal, ECF No. 1.

That same day, State Farm moved to dismiss Counts Two and Three of the Complaint. Mot. to Dismiss, ECF No. 7.

On October 9, 2025, Mr. Jimenez filed an opposition to State Farm's motion. Opp'n, ECF No. 15.

On October 22, 2025, State Farm filed a reply. Reply, ECF No. 16.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible."

*Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *See also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## III. DISCUSSION

State Farm does not move to dismiss Mr. Jimenez's breach-of-contract claim, Count One. The Court therefore addresses only State Farm's arguments concerning the breach of the implied covenant of good faith and fair dealing claim, Count Two, and the declaratory judgment claim, Count Three.

The Court addresses each claim in turn.

### A. The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

Under Connecticut law, "[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Dorfman v. Smith*, 342 Conn. 582, 597 (2022) (internal quotation marks omitted). In this context, bad faith "implies . . . actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Id.* at 605–06 (internal quotation marks omitted). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.* at 606 (internal quotation marks omitted).

An insurer's failure adequately to investigate a claim, "when accompanied by other evidence[] reflecting an improper motive," may support an inference of bad faith. *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014) At the same time, negligence or an incorrect coverage determination, without facts supporting an inference of dishonest purpose, is insufficient. *See Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*, 199 F. Supp. 3d 559, 600–02 (D. Conn. 2016) (applying Connecticut law and finding no bad faith where the insurer's conduct was negligent and, at times, unreasonable, but there was no evidence of "a dishonest purpose" or "some interested or sinister motive"); *Tahbaz v. Vigilant Ins. Co.*, 778 F. Supp. 3d 480, 496–97 (D. Conn. 2025) (dismissing a bad-faith claim where the insureds' allegations were "wholly conclusory" and the dispute reflected a good-faith disagreement over coverage).

State Farm argues that Mr. Jimenez has failed to allege facts supporting the dishonest purpose necessary for a bad-faith claim. State Farm argues that Mr. Jimenez "simply realleges all of the facts alleged in Count One concerning the alleged breach of the insurance policy" before making what State Farm characterizes as a conclusory allegation of bad faith based on its denial of coverage, failure to pay the claim, and allegedly improper and unreasonable information requests. Def.'s Mem. at 5.

More specifically, State Farm argues that, although Mr. Jimenez alleges that State Farm denied coverage and requested documents, he "does not plead any facts showing that these acts were undertaken with ill will, fraud, or intent to deceive," nor does he allege that State Farm "fabricated policy provisions, concealed evidence, or engaged in any conduct from which this Court could reasonably infer a dishonest purpose." *Id.* at 7. As to the allegedly improper document requests, State Farm emphasizes that "[t]here are no facts pled that describe the

requests Plaintiff deems unreasonable and improper" and that Mr. Jimenez's only reference to such requests is to "the Policy section that describes the information State Farm is entitled to after a loss." *Id.* at 9–10. Thus, in State Farm's view, the allegations establish, "at best," that State Farm requested information "it was entitled to under the Policy," rather than conduct reflecting a "dishonest purpose" or "ill will." *Id.* at 10.

In response, Mr. Jimenez argues that his allegations "demonstrate that Defendant abused the conditions contained in the policy, created requirements beyond what are set forth in the policy, and ignored documentation from the Plaintiff demonstrating an entitlement to coverage, all in an effort to avoid issuing further payment to plaintiff." Opp'n at 1. More specifically, Mr. Jimenez points to the Policy language requiring the production of records and documents only "as often as we reasonably require," Compl. ¶ 18, and argues that "Plaintiff complied with the Policy by sending Defendant all relevant documents in Plaintiff's possession." Opp'n at 3. Nevertheless, he argues, "Defendant maintained its denial on the basis that Plaintiff did not produce all requested documents." *Id.* at 4. Mr. Jimenez contends that "Plaintiff cannot will documents into existence" and that requiring nonexistent documents as a condition of coverage "creates additional conditions to coverage than those that are set forth in the policy." *Id.*

Mr. Jimenez further argues that State Farm maintained its denial despite receiving documentation that, in his view, established his entitlement to fair rental value coverage. Specifically, he relies on "deposit receipts evidencing rental income, a news article demonstrating that tenants were displaced, and a signed letter from the tenant." *Id.* at 4; *see also* Compl. ¶¶ 13–15. According to Mr. Jimenez, after receiving this documentation, State Farm, "without any good faith basis, simply continued to deny the Fair Rental Value claim and refused to release any payments." Opp'n at 4. Thus, in Mr. Jimenez's view, State Farm did not merely

reach an incorrect coverage determination but instead used the Policy's post-loss conditions to avoid its contractual obligations despite documentation supporting the claim.

In reply, State Farm again emphasizes that Mr. Jimenez "has not pled any facts demonstrating that Defendant's denial was motivated by fraud or ill-will, or that the stated reason for the denial was knowingly false." Def.'s Reply at 2. State Farm characterizes the parties' disagreement as one concerning "the sufficiency of documents produced by an insured during the process of adjusting an insurance claim," which, "even if the insurer is wrong," does not itself establish bad faith. *Id.* And although Mr. Jimenez relies on his submission of "a letter from an alleged tenant, bank deposits, and a news article," State Farm argues that those materials do not, standing alone, establish that "all of plaintiff's duties after a loss were sufficiently and timely met," or that State Farm's contrary determination "was without basis." *Id.* at 3.

The Court disagrees.

The breach of the implied covenant of good faith and fair dealing claim here does not rest solely on the conclusory allegation that State Farm acted in bad faith. Count Two expressly provides: "Paragraphs One through Twenty-Five of Count One are hereby incorporated as Paragraphs One through Twenty-Five of this Count Two, respectively." Compl., Count Two ¶¶ 1–25. Those incorporated allegations state that "Plaintiff provided bank deposit receipts demonstrating that Plaintiff collected rent in cash" and that "Plaintiff's rental ledger was destroyed by the fire." *Id.*, Count One ¶ 13. They further allege that "[a] news article describing the fire at the Property stated that three tenants were impacted by the fire," *id.* ¶ 14, and that, "[i]n a signed letter dated June 6, 2024, Ms. Sime stated that she provided Plaintiff with $2,200 on the first of every month, for approximately 14 months, to fulfill her rental obligations," *id.* ¶ 15. The Complaint also alleges that "Plaintiff complied with said provisions by providing

Defendant all responsive and relevant documentation in Plaintiff's possession" and that "Plaintiff is unable to provide Defendant documents that do not exist, as seemingly and nonsensically requested by Defendant." *Id.* ¶ 19. Paragraph 20 then alleges that State Farm was "intentionally misrepresenting and misconstruing the terms and application of the Loss of Use coverage and 'Your Duties After Loss' by making improper and unreasonable requests to Plaintiff that are impossible to comply with" and was "doing so in an intentional effort to avoid its contractual obligations to Plaintiff in an effort to avoid issuing further payment." *Id.* ¶ 20.

Taken together, these allegations plausibly allege more than a mere coverage dispute or negligent investigation. *See De La Concha*, 269 Conn. at 433 (stating that bad faith involves conduct "not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive"); *Martin*, 185 F. Supp. 2d at 165 (distinguishing a bad faith claim from "[a]llegations of a mere coverage dispute or negligence by an insurer in conducting an investigation"); *cf. Karas v. Liberty Ins. Corp.*, 33 F.Supp.3d 110, 116-117 (D.Conn. 2014)(finding as sufficient to defeat a motion to dismiss allegations that "Liberty Mutual ignored the coverage provided for "collapse," intentionally cited inapplicable policy provisions, and misled the [Plaintiffs] solely for the purpose of preserving its own assets."). And courts in this District have distinguished between an insurer's reasonable disagreement over coverage and allegations that an insurer knowingly used an improper basis to deny contractual benefits. *See Cyr v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-85, 2017 WL 1053839, at *3 (D. Conn. Mar. 20, 2017) (applying *Martin* and *McCulloch* and concluding that the complaint could "fairly be read to assert" that the insurer denied coverage through a "false and misleading reference" to policy provisions despite its alleged knowledge of other provisions providing coverage); *see also Durham v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. 3:16-CV-01643 (VLB), 2017 WL 3097590, at

*3 (D. Conn. July 20, 2017) (applying *De La Concha*, *Capstone*, and *Martin* and concluding that allegations of intentional improper denials despite knowledge of contractual obligations, construed in the insured's favor, "constitute more than a coverage dispute or negligence").

State Farm may ultimately establish that its requests were reasonable, that the materials Mr. Jimenez provided were insufficient under the Policy, or that its denial resulted from an honest interpretation of Mr. Jimenez's contractual duties. As *Hartford Roman Catholic Diocesan* illustrates, even claims-handling conduct that is "certainly negligent, perhaps even reckless" does not establish bad faith where there is "simply no evidence from which the Court can infer 'a dishonest purpose' or 'some interested or sinister motive,'" rather than "an honest mistake or mere carelessness or inattention." 199 F. Supp. 3d at 601. Likewise, although the court characterized other conduct as "unreasonable and unfair," it found "no evidence of bad faith, as opposed to mere negligence." *Id.* at 602. Those conclusions, however, were reached after a bench trial on a developed evidentiary record. At the pleading stage, Mr. Jimenez need only allege sufficient factual content to permit a reasonable inference that State Farm acted with the dishonest purpose required under Connecticut law, and he has done so here.

Accordingly, State Farm's motion to dismiss the breach of implied covenant of good faith and fair dealing claim will be denied.

**B. The Declaratory Judgment Claim**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has emphasized that the Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act

therefore "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants," and a district court may dismiss a request for declaratory relief where, in the sound exercise of its discretion, such relief would serve no useful purpose. *Id.* at 288.

Consistent with *Wilton*, the Second Circuit has construed the Act as providing "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). Relevant considerations include "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved" and "whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* at 359–60.

Courts in this District thus have dismissed requests for declaratory relief that merely duplicate claims already before the court. *See Ainsworth v. Amica Mut. Ins. Co.*, No. 3:16-cv-01139 (MPS), 2018 WL 4425991, at *7 (D. Conn. Sept. 17, 2018) (dismissing a declaratory judgment claim in a homeowners-insurance dispute because it "does not seek any relief independent from [the] breach of contract claim"); *Sage Fulfillment, LLC v. Earth Animal Ventures, Inc.*, No. 3:20-cv-00444 (VAB), 2020 WL 6383166, at *3 (D. Conn. Oct. 31, 2020) (recognizing, under the discretionary framework articulated in *Dow Jones*, that courts in this District have dismissed declaratory relief as duplicative of other claims and dismissing the declaratory claim).

State Farm argues that the declaratory judgment claim should be dismissed because Mr. Jimenez "simply restates the breach of contract and bad faith counts." Def.'s Mem. at 12. Specifically, State Farm notes that Mr. Jimenez seeks declarations that "the Policy provides coverage, that State Farm wrongfully denied coverage, and that State Farm acted in bad faith." *Id.*; *see also* Compl. ¶ 31. According to State Farm, "Each of these declarations will necessarily

be resolved by adjudicating Counts One and Two." Def.'s Mem. at 12. If Mr. Jimenez prevails on the breach of contract claim, "the Court will necessarily have determined that coverage exists and that State Farm wrongfully denied payment." *Id.* If he prevails on the breach of the implied covenant of good faith and fair dealing claim, "the Court will necessarily have determined that State Farm acted with the requisite dishonest purpose." *Id.* State Farm therefore argues that declaratory relief "adds nothing to the case." *Id.*

Mr. Jimenez does not separately respond to State Farm's argument concerning Count Three. His opposition instead addresses whether the Complaint sufficiently alleges a breach of the implied covenant of good faith and fair dealing, arguing that State Farm "abused the conditions contained in the policy, created requirements beyond what are set forth in the policy, and ignored documentation from [Mr. Jimenez] demonstrating an entitlement to coverage." Opp'n at 1; *see also id.* at 3–4.[1]

The Court agrees.

The declaratory judgment claim expressly provides: "Paragraphs One through Twenty-Eight of Count One and Count Two are hereby incorporated as Paragraphs One through Twenty-Eight of this Count Three, respectively." Compl., Count Three ¶¶ 1–28. It further alleges that "an actual and bona fide controversy exists between the parties as to their legal relation with respect to the Policy and the Loss." *Id.* ¶ 29. Mr. Jimenez seeks declarations that: (1) "[t]here is insurance coverage under the Policy for the Claim and for the damages sustained by Plaintiff as a result of the Loss"; (2) "Defendant owes coverage to Plaintiff under the Policy for the Claim and

[1] Significantly, Mr. Jimenez's failure to respond to State Farm's argument concerning Count Three also supports treating that claim as abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 195–96 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (deeming a claim abandoned where the defendant moved to dismiss the claim and the plaintiff "did not address the Respondent's arguments in his opposition papers").

for the damages sustained by Plaintiff as a result of the Loss, including the Loss of Use claim for loss of rental income"; (3) "Defendant wrongfully denied coverage"; and (4) "Defendant breached the covenant of good faith and fair dealing." *Id.* ¶ 31(a)–(d).

The declarations concerning coverage, State Farm's obligation to pay, and the propriety of its denial thus duplicate the issues that will be resolved through the breach of contract claim. To prevail on this claim, Mr. Jimenez will have to establish that the Policy entitled him to the disputed fair rental value coverage and that State Farm breached the Policy by refusing to provide that coverage. Resolution of Count One therefore will determine whether the Policy covers the claimed loss, whether State Farm owes Mr. Jimenez payment under the Policy, and whether State Farm wrongfully denied the Claim. *See Ainsworth*, 2018 WL 4425991, at *1 (dismissing the declaratory judgment count because it "does not seek any relief independent from [the] breach of contract claim"); *see also Sage Fulfillment*, 2020 WL 6383166, at *3 (applying the discretion recognized in *Dow Jones* and dismissing declaratory relief where the issue was already addressed through the plaintiff's substantive contract claim).

The requested declaration concerning bad faith likewise adds no independent issue. The declaratory judgment claim asks the Court to declare that State Farm "breached the covenant of good faith and fair dealing," Compl. ¶ 31(d), while there is a separate substantive claim for breach of the implied covenant of good faith and fair dealing claim. A separate declaratory judgment therefore would not "serve a useful purpose in clarifying or settling the legal issues involved" or provide meaningful "relief from uncertainty." *Dow Jones*, 346 F.3d at 359–60.

Accordingly, State Farm's motion to dismiss the declaratory judgment claim will be granted.

## IV. CONCLUSION

For the foregoing reasons, State Farm's motion to dismiss is **GRANTED in part** and **DENIED in part.**

The declaratory judgment claim, Count Three, is **DISMISSED** from the case, but the breach of the implied covenant of good faith and fair dealing claim, Count Two, shall remain in the case, along with the breach of contract claim, Count One.

**SO ORDERED** at New Haven, Connecticut, this 14th day of August, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE